## BALTIMORE CITY COURT.

Filed April 1, 1909.

EDWIN M. WILMER, TO THE USE OF T. FRANK CLARK,

VS.

WALTER B. McCARDELL, GARNISHEE OF JAMES W. PACA.

*D. Eldridge Monroe* and *Jos. P. Merryman* for plaintiff.

*H. M. Benzinger, Chas. F. Stein, Wm. G. Towers* and *Chas. J. Bouchet* for defendants.

**SAMS, J.—**

This is an appeal tried before the court without a jury, and is an appeal in an attachment case, the attachment having been issued on a judgment of a justice. The same magistrate having rendered the judgment and afterwards issued the attachment. The attachment is also one of a series of such attachments obtained by the plaintiff in this case on a number of judgments rendered in his favor by different magistrates in Baltimore City, against various defendants. Some of these judgments, upon which attachments were issued, were of such venerable age, that their very existence had been forgotten by all parties interested except the industrious plaintiff. In the case under consideration, with the writ and attachment thereto, were certain interrogatories, which were served at the same time the writ was served by the constable, but by the notice attached to them, were required to be answered about a week before the return day of the writ.

Because of the number of these cases it has been thought worth while to state the facts in this case somewhat fully, and while the facts in this case differ in some respects from those in the other cases tried on appeal in this court, in which the same plaintiff appears, still there is a decided resemblance, as the evidence shows, between this case and the other attachment suits brought by this extremely active and pertinacious plaintiff. The general scheme of the plaintiff is the same in all of the attachments which he has had issued from time to time.

Besides, the questions raised in this case, except as to one point of law, are the same as those raised in all the other cases.

On August 17th, 1908, a judgment was obtained by Wilmer, the legal plaintiff, against Paca, the judgment debtor for $80.58 with interest, until paid and costs. On the 23rd day of September, 1908, an attachment was issued by Randolph R. Warfield, a magistrate, upon said judgment and laid in the hands of Walter B. McCardell, the garnishee, on the 24th day of September, 1908, and at the time of the service of the writ certain written interrogatories, attached to the writ, were also served by the constable, Emanuel Lipper, who served both the writ and the interrogatories. The writ was made returnable on the 22nd day of October, 1908. A notice was attached to the written interrogatories as follows:

"To the Garnishee:

"Take Notice. That you are hereby required to answer in writing and under oath each one of the aforegoing interrogatories within twenty days from the service thereof on you.

"E. M. WILMER, Plaintiff."

It will be observed that according to that notice the interrogatories, which were attached to the writ, were to be answered within twenty days after service which was about seven days before the writ was returnable. The answers to the interrogatories were in writing and under oath and filed with the magistrate on the 9th day of October, 1908. The interrogatories contained the usual questions. The answers, in effect, stated that the judgment debtor was an employee of the garnishee at a weekly salary of $18 payable each Saturday,. that the garnishee owed nothing to the judgment debtor, but in fact that the judgment debtor owed the garnishee about $250. The case was then tried before the justice and judgment of condemnation was given for $84.35 and $6.56 costs and interest until paid. The garnishee appealed to this court.

In the trial on appeal McCardell, the garnishee, was called by the plaintiff as a witness, and testified that he was a builder, an attachment was laid in his hands, on the day named in the writ, upon a judgment in favor of the plaintiff, Wilmer, against the defendant, Paca, and attached to the writ were certain interrogatories to be answered within twenty days from the day of service, that the interrogatories were answered in writing and under oath in time, in fact, about a week before the twenty days expired under the notice, namely on the 9th day of October, 1908, the twenty days expiring on the 14th day of October, 1908, that he never gave Paca a promissory note.

had paid him up, owed him weekly, paid him weekly. Paca was a boss carpenter in his employ, at $3 a day, $18 a week. The same witness, after the close of the plaintiff's case, was called as witness in his own behalf and in addition to a repetition of the evidence given as witness for the plaintiff, testified that instead of his owing the judgment debtor anything, Paca owed him about $250, and that the witness had deducted about $7 from Paca's wages to repay himself, and that at the trial below had claimed an exemption, as garnishee from attachment on the ground that Paca was an employee of his, and that he paid Paca only wages. That such exemption was claimed at the trial below was substantiated by the witness, Bouchet, who was the attorney for the garnishee, and represented him at the trial before the justice.

The magistrate, who heard the case below, was called as a witness on behalf of the plaintiff and produced his docket and testified that the garnishee admitted assets of $90, that interrogatories and answers were filed and that judgment was given for $84.35, costs and interest, and upon cross-examination testified that assets were confessed by garnishee, that upon being shown the writ admitted that there were certain erasures in it, that figures and words had been scratched out but by whom he did not know, that certain entries on the back of the writ and in his docket had been made by the plaintiff, Wilmer, that the witness had permitted this to be done but that he had signed the writ and the docket, that the writ and the interrogatories were sent out the same day being attached the one to the other, that the dates were filled in when the writ was issued; that the plaintiff, Wilmer, filled in the blanks, the witness signing and issuing and that the docket entries show confession of assets.

Wilmer, the plaintiff, testified that he was present at the day of the trial below, that the garnishee appeared and admitted that Paca, the judgment debtor, was in his employ, that he paid him a weekly salary and that the garnishee had assets between the times the attachment was laid and the day of trial, that he claimed judgment for the amount for which judgment was entered, and on cross-examination admitted that McCardell, garnishee, testi-

fied that Paca was an employee and was paid a weekly salary, that he filled out the blanks in the writ down to the signature of the justice, that part of the entries in the docket of the justice were in the handwriting of the witness, that in making those entries he acted as "the scribe" of the justice, that once the writ was returned not served, then "I changed the dates" and the writ was re-issued, that no exemption claimed.

Under the facts it is perfectly clear that the judgment of the magistrate should be reversed, because under Section 33, Article 9 of the Code, "No attachments of the wages or hire of any laborer or employee in the hands of the employers, whether private individuals or bodies corporate, shall effect any salary or wages of the debtor which are not actually due at the date of the attachment, and the sum of $100 of such wages or hire due to any laborer or employee by any employer or corporation shall always be exempt from attachment by any process whatever." In this case that section absolutely controls, and it is extremely difficult to understand how the magistrate could have rendered a judgment in favor of the attaching creditor.

That as Section 33 of Article 9 is conclusive of this particular case under the evidence. It would not be worth while to do anything more than to reverse the magistrate without any further discussion except, first, for the most remarkable admission made by the justice at the trial, that is, that he permitted the plaintiff to make entries in his docket, and in fact, make the most important entries; second, two points of practice, and third, the question as to the liability for costs.

It appears from the evidence that the justice permitted the plaintiff to make the greater part and the most important parts of the entries in his docket, and that the justice simply signed what was written by his "scribe," who was at that time plaintiff. That this is a fact, was clearly proven both by the papers in the case, and by an examination of the docket itself, which was put in evidence and the admission on the witness stand of both the magistrate and the plaintiff. Certainly such a proceeding cannot be passed over without being condemned as impropriety at least. Section 13,

Article 52 of the Code, provided, that: "Each justice of the peace shall keep a docket and therein record and make regular entries of his proceedings in all cases in which he shall act in virtue of his office." There is no doubt that the justice, if he needs a clerk, could have one, but this section certainly does not permit the justice to allow his docket to be kept in great part by one of the litigants. The plaintiff, after the judgment was rendered in his favor by the justice, had it entered to the use of T. Frank Clark.

At the hearing of the case on appeal a motion was made to dismiss the appeal and to enter judgment absolute, which motion was overruled because in the Baltimore City Court appeals from justices are tried de novo, and a trial de novo means a trial had in this court as if no action whatever had been instituted before. It means a trial of the case anew, hearing evidence, whether additional or not, and not a trial on appeal with nothing for the record to correct errors. That being the law controlling this court upon hearing cases on appeal, like the one under consideration, the motion for a judgment absolute and to dismiss the appeal was overruled and the case heard on its merits.

It was also argued by the plaintiff that on the garnishee was the burden of proof to show he did not have assets. There cannot be any doubt that it is for the plaintiff to prove assets in the hands of the garnishee, and it was so held.

This question of practice was raised in this case, namely, have justices of the peace authority under attachment laws to issue interrogatories on attachments on judgments? It is true that in Latrobe's Justices' Practice, page 122, Sec. 506, Eighth Edition, a form is given for interrogatories to be used in cases of attachments on judgments before justices, but the interrogatories there given are "taken from those which long use has sanctioned and experience recommended in the courts of the State."

Article 9, Section 15, of the Code, provides that "In all cases of attachments, whether upon warrant, judgment or decree, the plaintiff may exhibit interrogatories in writing to the garnishee, who shall by rule of court answer each and every of said interrogatories * * *" and Section 13 of said Article 9 provides "that in all cases in which a garnishee has been summoned, at any time after the return of the writ, the plaintiff may file interrogatories in the cause, which shall be served by the sheriff upon the garnishee within ten days thereafter. * * *" The rule of court (Common Law Rules) No. 13, p. 17 (Forbes). "Answers to interrogatories," provides: "After the garnishee in attachment has filed his answers to interrogatories, he may serve a copy thereof on the plaintiff, and all exceptions intended to be taken to said answers shall be filed in fifteen days from the time of service of the copy thereof on the plaintiff, and not afterwards, unless by special leave of court."

In the case of Wilmer, etc., vs. Mc-Cardell, garnishee, the answers to the interrogatories were made returnable before the return day of the writ. If they were filed by virtue of Section 13 of Article 9, the provisions of that Section were not followed, and, therefore, for that reason alone, the interrogatories were improperly issued.

Furthermore, Section 13 of Article 9 provides, that when interrogatories are filed in the cause, they "shall be served by the sheriff upon the garnishee within ten days thereafter" * * * which also was not done in the case of Wilmer, etc., vs. McCardell, garnishee. An examination of Article 52, Code of 1904, shows that nowhere in Article 52, the article entitled "Justices of the Peace," can there be found any authority for the issuance of interrogatories by the magistrates in all attachment cases. Section 69 of Article 52, says any justice of the peace may issue an attachment by way of execution in any case where he is authorized to issue a fieri facias. Although this section gives the authority to issue attachments, neither this section nor any other section in Article 52 provides for the issuing of interrogatories. They must be answered under rule of court, filed after the return of the writ, served by the sheriff, and if the garnishee neglect to answer, the court is directed to adjudge that such garnishee has in his possession property of the defendant, etc. It will be noted that Section 48 of Article 52, Code 1904, provides that "In all actions of replevin the proceedings before justices of the peace shall be similar to those in the several Courts

of this State, or the three common law courts of civil jurisdiction in Baltimore City." The Act of 1852, Chapter 239, entitled: "An Act to Extend the Civil Jurisdiction of Justices of the Peace, and to Prescribe Their Powers and Duties," provides in Section 2: "That in all sections of replevin and of attachment, the proceedings before justices of the peace shall be similar to those in the several Circuit Courts of the State; but no special pleading shall be required before justices of the peace." In the Code of 1860, Article 15, this section reads as follows: "In all actions of replevin, the proceedings before justices of the peace shall be similar to those in the several Circuit Courts of this State." In the Code of 1888, Article 52, Section 46, Replevin, is identically the same as Section 48, Article 52, Code of 1904. It will, therefore, be seen that the word attachment, which appears in the Act of 1852, Chapter 239, Section 2, is left out of the corresponding sections in the Code of 1860, 1888 and 1904, accordingly is actions of replevin, the proceedings before justices shall be similar to those in the several Circuit Courts of the State, but proceeding in attachments must be such as are expressly given to justices by statute. I cannot find any authority under our attachment laws given to justices power to issue interrogatories upon judgments, especially when the interrogatories are attached to and a part of the lot it, and the answers thereto returnable before the return day of the writ.

The question as to costs is entirely free from difficulty. The judgment below in this case entered to the use of T. Frank Clark, soon after the magistrate decided in favor of the plaintiff, and the question arises whether both the legal and equitable plaintiff are liable, or is the equitable plaintiff alone liable for the costs. The Court of Appeals, in the case of Wilson vs. Williams, 106 Md. 672, in passing upon Section 89, Article 24 of the Code, which provides that "Whenever any suit or action, whether in the name of the State or of an individual, shall be marked for the use of any person, the person for whose use such suit or action is marked, shall be liable for costs as if he were the legal plaintiff," says, "That statute is to be found under the article on 'Costs' and applies to chancery proceedings as well as to those at law. See Miller's Eq. Prac. 106, 348. The legal and equitable plaintiffs are both liable for costs, 2 Poe, Section 212."

Therefore, both the legal plaintiff, Wilmer, and the equitable plaintiff, Clark, are liable for the costs in this case and the judgment for the costs will be entered up against both of them.

The judgment of the magistrate is, therefore, reversed and the verdict of the City Court is for the defendant, the garnishee, with costs on both the legal and equitable plaintiffs.